**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

*Michelle A. Wojciechowski,*

           Plaintiff,

v.                              Case No. 8:23-cv-1885-SDM-TGW

*City Of New Port Richey, Timothy*
*Driscoll, and Charles Morgan,*

           Defendants.

_____/

# AMENDED COMPLAINT

The undersigned law firm files this lawsuit on behalf of Michelle A. Wojciechowski who is suing the City of New Port Richey ("NPR"), Timothy Driscoll, and Charles Morgan, and alleges the following in support of her petition for monetary damages and equitable relief:

**PRELIMINARY STATEMENT**

1.    Plaintiff files this lawsuit because her civil rights, among other things, were violated by the three named defendants and several others not named in this lawsuit who were employed by NPR and who participated in the reviling, reprehensible, and repugnant behavior described in this pleading.

2.    This lawsuit seeks monetary compensation for the financial, emotional, and psychological harm suffered by the Plaintiff at the hands of each of the named Defendants and others who are not named in this lawsuit, but participated in

the unconstitutional, unlawful, and punitive behavior alleged throughout this pleading, which includes without limitation, the denial of the Plaintiff rights to due process under the Fourteenth Amendment of the United States Constitution, among other issues to be discussed below.

3.      Plaintiff is likewise seeking all equitable remedies available to her, which would include but not be limited to injunctive relief against future retaliation, and ultimately, Plaintiff will ask the Court for punitive damages at trial due to the Defendants' intentionally egregious and vicious behavior.

## PARTIES

4.      Michelle A. Wojciechowski is an individual that is domiciled in Newport, which is in Cocke County, Tennessee.

5.      At all times material hereto, Plaintiff owned and continues to own certain real property located at 5445 Gulf Drive, which is in the City of New Port Richey, Florida ("the Property"); disputes concerning various legal and constitutional matters surrounding Plaintiff's ownership of the Property are fundamental to the unconstitutional, retaliatory, and unlawful conduct that underlies the legal theories for which Plaintiff seeks relief from this Court.

6.      The City of New Port Richey ("NPR") is a Florida Municipal Corporation organized and existing under the laws of the State of Florida, with the capacity to sue and be sued. NPR is in Pasco County, Florida.

7.      Timothy Patrick Driscoll ("Driscoll") is an individual that resides in the city of St. Petersburg, which is in Pinellas County, Florida.

8.      Driscoll is licensed to practice law by The Florida Bar under Florida Bar Number 566306 and based on information and belief known to the Plaintiff, he owns and operates his own private law practice (the Driscoll Law Firm), where he practices law on a full-time basis.

9.      Based on publicly available information, Driscoll has been retained by NPR as an independent contractor, to provide legal advice to NPR based on annual contract that provides for a monthly retain and fee for service for additional work that he would provide to NPR.

10.      Although he holds out to the public that he is the "City Attorney," and that NPR had given him this title,  both Driscoll's contract with NPR and NPR's City Code make it abundantly clear that Driscoll is not an employee of NPR (it is required as a condition of his engagement that he not be an employee and that he be an independent contractor), and that the services that he provides to NPR are no different than any other vendor that NPR may engage to provide services to NPR or the citizens of NPR.

11.      Charles Morgan is an individual that resides in the City of New Port Richey, Florida, which is in in Pasco County, Florida, and is currently employed by NPR as a code enforcement officer.

## JURISDICTION AND VENUE

12.     Plaintiff alleges that venue is proper in the United States District Court for the Middle District Court of Florida (Tampa Division) because the acts and omissions giving rise to the claims alleged in this lawsuit occurred in Pasco County, Florida, which is within the geographical boundary of this District.

13.     Plaintiff alleges, for the purposes of subject matter jurisdiction, that she is seeking compensatory damages in an amount greater than $1,000,000.00, exclusive of interest, attorneys' fees, and costs, etc.

14.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as several of the claims asserted in this lawsuit arise under the laws of the United States of America, including 42 U.S.C. § 1983.

15.     This Court likewise has original subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) as complete diversity exists between herself and the defendants – Plaintiff is domiciled in the State of Tennessee and the three defendants are domiciled in the State of Florida. Furthermore, the amount in controversy is over the $75,000 threshold for a diversity jurisdiction claim.

16.     This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of law, of rights, privileges, or immunities secured by the Constitution of the United States and 28 U.S.C. § 1367 which provides supplemental jurisdiction over state laws.

17.     Plaintiff alleges that this Court has supplemental jurisdiction over the state law claims under 18 U.S.C. § 1367, as the state law claims share all common operative facts with the federal law claims, and the parties are identical. Resolving all state and federal claims in a single action serves the interests of judicial, efficiency, economy, and fairness.

18.     All conditions precedent to the filing of this action, including those set forth in Fla. Stat. § 768.28(6)(a), have occurred, accrued, or have been waived as a matter of law, and all administrative remedies, to the extent they apply to any of the causes of actions, have been exhausted in full.

## <u>GENERAL ALLEGATIONS</u>

19.     Plaintiff is a licensed psychiatric-mental health nurse practitioner.

20.     On November 16, 2020, Plaintiff purchased the Property with the objective of establishing a facility that would provide psychiatric and mental health therapy practice to provide these much-needed services, especially given the remarkable impact that COVID 19 had on the mental health of United States citizens during this period.

21.     All publicly available information, including NPR's municipal records, identified the Property as zoned for mixed use as "office/ residence", and therefore that made this location ideal for Plaintiff to purchase to accomplish her personal and business objectives; it was important, at the time that she purchased the property, that the property be zoned for mixed use to provide Plaintiff with maximum flexibility to

both use the property as an office and eventually sell it if she needed to in the future as an office or a residence.

22.    The Property required a meaningful investment of financial and other resources to make the property usable, such as routine repairs, painting, landscaping, replacement of broken fixtures, and other customary and typical labor that any investor would commit to improving the physical appearance and usefulness of a structure and property that had been neglected for a significant number of years.

23.    Once Plaintiff closed on the Property and relocated to the area, she made a meaningful investment of financial and other resources to make the repairs to the structure, fixtures, landscaping, and to cleaning the property, all very routine, but important tasks that any business owner or resident would make to improve both the physical appearance of the structure and surrounding area, and the make it functional, safe, and ensure that the structure and property complies with all state and local requirements.

24.    Plaintiff, as she embarked on her journey to repair, maintain, and clean the Property, was observant to her obligations to comply with NPR's codes and ordinances, and went to City Hall to make inquiries of the various departments ensure that she did not run afoul of any of her obligations.  In other words, Plaintiff was proactive in her approach to complying with NPR rules and not reactive.

25.    Plaintiff spoke with Tammy Ledford, a permit technician at the NPR's building department, regarding NPR's requirements for opening a business because she wanted to ensure that she complied with all of NPR's requirements for operating

her business and assumed that the building department would provide her with directions and information to ensure compliance.

26.    Plaintiff explained to Ledford that she planned to open a mental health therapy practice at the Property, and asked her what permits, fees, and other prerequisite were required to enable her to open her practice.

27.    Unexpectedly, Ledford responded to Plaintiff's request for information with anger and disdain, instead of providing her with the basic and necessary information she needed to comply with NPR requirements to start her business.

28.    Ledford told Plaintiff, in an offensive tone, that "methadone clinics" were not welcome in NPR and refused to provide Plaintiff with a clear and direct answer regarding NPR's requirements for opening a business - essentially refusing to speak with her further about the issue.

29.    Plaintiff was taken aback by Ledford's brashness and remarks since there was no mention of opening a methadone clinic, and Plaintiff made it clear that she had no intention of providing any such services – she was merely seeking the guidance on her obligations to opening a mental health clinic where she would provide mental health counseling to individuals that needed such help.

30.    Plaintiff reiterated the fact that she merely wanted to provide mental health counseling for clients and wanted to make sure she had the proper permits and licenses from NPR, and nothing more.

31.    Plaintiff was rebuffed by NPR and was not provided with any information that she requested to ensure that her objectives complied with NPR's municipal codes, business registration requirements, etc.

32.    Shortly after her conversation with Ledford, Plaintiff received her first of many assaults from NPR employees, NPR city officials, and third parties that the NPR employs, all of which culminated in the deterioration of Plaintiff's business objectives, her financial security, and ultimately her mental health.

33.    One of the first assaults and impingements on the Plaintiff's constitutional rights came at the hands of Charles Morgan, an NPR code enforcement officer who, and thereafter to the Plaintiff's knowledge, was not properly certified to perform the duties of a code enforcement officer, and to the Plaintiff's knowledge remained not properly certified throughout the time Plaintiff had dealings with him and NPR.

34.    In addition to lacking proper certification, Morgan had a significant conflict of interest regarding Plaintiff's and Morgan's involvement with an active child custody case in Pasco County, Florida that invariably clouded and impaired his judgment to act rationally and in compliance with his obligation to abide by Florida law, the United States and Florida Constitutions, among other issues.

35.    On October 26, 2021, Plaintiff requested a correction of satisfaction of Final Judgement of Garnishment in the above referenced domestic relations matter; several hours after which was filed, Morgan would initiate code violations.

36.    Plaintiff feared that Morgan's personal desires were interfering in his ability to perform his job impartially based on Plaintiffs perception of verbal aggression.

37.    Plaintiff's experiences with Morgan and the other Defendants are not coincidental, and based on complaints from other citizens, Defendants would show a pattern and practice of using their illusory city codes and ordinances, and the court system unconstitutionally.

38.    Plaintiff reasonably sent an email message to Morgan's supervisor Erik Jay in his official capacity as chief of NPR's code enforcement on November 3, 2021, to request an alternative code enforcement officer be assigned to her case, given the number of employed Code Enforcement officers within the five square mile city, and Morgan's conflict of interest.

39.    Jay rebuffed Plaintiff's practical request and instructed her to "fix the violations."

40.    It is noteworthy to mention that, regardless of the allegations by Morgan, the Property was vacant at the time of Morgan's first inspection, a fact known to Morgan.

41.    Moreover, on October 26, 2021, she had yet to open her practice because of Ledford's repudiation and refusal to provide her with the permits required to start her business.

42.    Morgan's October 26, 2021, citation was the first of many citations Plaintiff would receive for specious code violations, and it was the catalyst for ensuing vindictive, unconstitutional, and unlawful acts by Defendants against Plaintiff.

43.    NPR, Morgan, and Driscoll were engrossed in a surreptitious pattern and practice of using code violations, among other deceptive and unlawful tools in their arsenal, to intimidate property owners, forcing many to lose their property, sell it at a discounted price, or forfeit the property.

44.    Plaintiff made a concerted effort to comply with NPR ordinances and municipal codes, including frequent attempts to speak with NPR Officials, including NPR City Manager, Debbie Manns, and employees from the building department and code enforcement, about how to resolve the illusory code violations and how to get her practice properly permitted and licensed so she could open her business.

45.    Unfortunately, Plaintiff was rebuffed, then wrongfully and unconstitutionally denied due process, and a fair opportunity to present her situation to be able to resolve the legal issue without becoming embroiled in the multitude of legal machinations that the Defendants forced her to endure.

46.    Despite her assiduous struggle to seek NPR's cooperation and guidance, Plaintiff was denied due process, and all her attempts were rebuffed and ultimately not successful - scheduled meetings were canceled, telephone calls and email messages not returned, and Morgan would not communicate with her about resolving the unproven code violations.

47.    Desperate to receive some guidance from NPR officials, Plaintiff attended NPR City Council meetings (and other public forums) to exercise her constitutional right of free speech, to redress her grievances with NPR, and to raise her concerns about the unlawful and unconstitutional actions of NPR employees, with the expectation that members of NPR's City Council – including its City Manager Manns – would recognize the aberrant behavior (and a valid citizen complaint) and take measures to address her concerns to enable her to not only deal with unlawful and unconstitutional behavior, but provide her with the guidance necessary to ensure that she can comply with whatever rules, ordinances, etc. that NPR required of her so she can open her mental health practice, a very routine and appropriate request for a citizen to make of the government that is supposed to protect the interests of its citizens.

48.    Defendants, in lieu of addressing Plaintiff's concerns and providing her with guidance to comply with whatever NPR required of her, elected instead to launch an attack on Plaintiff to harass, intimidate, oppress, and force her to leave the City of New Port Richey, abusing their authority and the legal system as an artifice to accomplish their objective.   They, furthermore, threatened, harassed, stalked, and intimidated Plaintiff to prevent her from speaking out about NPR's unlawful actions.

49.    Defendants likewise threatened, harassed, stalked, and intimidated Plaintiff to prevent her from speaking out about NPR's unlawful actions.

50.     Documents obtained by Plaintiff in proceedings would show employees were directed to compile handwritten notes concerning Plaintiff's water records, detailing peculiar observations such as "left 12/23/21 &:00 Am . . . Returned 1/1/22 at 3 PM."

51.     NPR attacked and retaliated against Plaintiff for exercising her First Amendment right to free speech by citing her with a multitude of illusory code violations, in addition to denying her due process as articulated throughout this pleading.

52.     Not only did Defendants cite Plaintiff with many illusory code violations, but they also tried to have her criminally prosecuted based on the alleged civil code violations after their local magistrate case was dismissed for lack due process in favor of the Plaintiff.

53.     The following is a short list of lawsuits that Driscoll filed under the auspices of representing the State of Florida as a prosecuting attorney (instead of an attorney in private practice merely representing his client), which were frivolously filed and intentionally misrepresented the nature of the action that Driscoll and NPR were seeking to enforce:

- *State of Florida v. Michelle Wojciechowski*, Case No. 2022-MO-000038-MOAXWS, (Pasco Cty. Ct. 2022).

- *State of Florida v. Michelle Wojciechowski*, Case No. 2022- MO-000039-MOAXWS, (Pasco Cty. Ct. 2022).

- *State of Florida v. Michelle Wojciechowski*, Case No. 2022-MO-000102-MOAXWS, (Pasco Cty. Ct. 2022).

- *State of Florida v. Michelle Wojciechowski*, Case No. 2022-MO-000103-MOAXWS, (Pasco Cty. Ct. 2022).

- *State of Florida v. Michelle Wojciechowski*, Case No. 2022-MO-000114-MOAXWS (Pasco Cty. Ct. 2022).

- *State of Florida v. Michelle Wojciechowski*, Case No. 2022- MO-000190-MOAXWS, (Pasco Cty. Ct. 2022)

54.    Although Plaintiff was prepared to go to court for the filings included above, Defendants decided On March 16, 2022, Defendants (lead by Driscoll and Morgan) to forcibly broke into the Property.

55.    Defendants likewise used the illusory code violations to unlawfully obtain an illegal and unconstitutional inspection warrant to search the Property at a time when they knew Plaintiff would not be present to observe their ruthless and unconstitutional conduct.

56.    NPR employees on March 16, 2022, decided to use unconstitutional and unlawful measures forcibly gain access to enter the Property knowing that the warrant they read on camera specified that Plaintiff was to be present, and that Plaintiff was not notified. NPR has a custom of violating private property under color of law and according to public records of phone logs obtained by Plaintiff shows that NPR employees acting within their scope used municipal phones to contact a local lock smith on March 16, 2022, and within hours of that phone call was asked to break into Property.

57.     Security tape footage of the break in (and body cam footage from the officers involved) shows law enforcement officers with guns drawn contemplating how to handle harm assignation of Plaintiff's dogs who were apparently known by defendants to be at the property and instead of calling animal control, they were directed to go in "low and ready".

58.     Before breaking into the Property, Defendant were observed searching through areas that one would assume would not be related to a code violation including the Plaintiff's bins on the Property.[1]

59.     Videotape footage also shows police officers, Driscoll, several fire fighters, and others illegally handling and searching through Plaintiff's personal property, including jewelry, boxes, books, furniture, and other personal effects in the building, which is illegal and unconstitutional, and which far exceeds the limits of the unlawful inspection.

60.     After defendants broke into Plaintiffs property, Driscoll would then to re-file a series of new violations in Pasco County.

61.     Driscoll filed lawsuits against Plaintiff without probable cause or the requisite evidence to support each lawsuit, and when Plaintiff hired an attorney to

---

[1] Security tape footage and body cam footage from the officers involved in this spurious operation show Driscoll and others rummaging through the trash receptacles outside of the Property, apparently searching for drugs, narcotics, etc. as there would be no basis for them to search trash cans for an alleged (civil) code violation related to the interior of the property. Clearly, this was an abuse of a civil inspection warrant to conduct a criminal search of Plaintiff's personal and real property.

defend herself, Driscoll panicked and voluntarily dismissed each lawsuit, without resolving the issues or reaching an accord with Plaintiff.

62.    NPR and Driscoll knew these lawsuits lacked merit, were frivolous, and were filed as part of a calculated scheme to oppress, intimidate, and retaliate against Plaintiff for the reasons discussed above, and consistent with the same type of actions they have taken against many citizens and property owners in the City of New Port Richey including *Howarth v. City of New Port Richey, Sullivan vs City of New Port Richey*.

63.    Driscoll and NPR had a custom of denying citizens of due process; for example, see the following except from a transcript from a hearing concerning the Plaintiff's illusory code violations highlights the lengths to which they would go to deny due process:

> DRISCOLL: 4  I certainly don't have any reason to oppose
> 5  their deposing any witnesses if that's what they
> 6  want to do.
> 7  This is a code enforcement case. These are
> 8  generally -- these are not things that are
> 9  generally done in these types of cases.
> 10  But certainly, Judge, if you're at all
> 11  inclined to consider striking witnesses, I would
> 12  ask that you continue the trial instead.
> 13  THE COURT: Well, you're quite right,
> 14  Mr. Driscoll, that usually in these type of
> 15  cases it's not done, but that doesn't mean that
> 16  the rules don't provide for it. And
> 17  Ms. Wojciechowski has due process rights

64.     On March 16, 2022, Defendants (lead by Driscoll and Morgan) forcibly broke into the Property with guns drawn and proceeded to search the property without probable cause.

65.     Even after Defendants, on March 16, 2022, executed an unlawful search into Plaintiffs property, Driscoll would continue to re-file a series of new violations in Pasco County against Plaintiff. On March 16, 2022, body camera footage would show police and code enforcement officers discussing their future plans for citizen Ronald Howarth's property. Then, 15 days later, on March 31, 2022, Plaintiff was asked by Mr. Howarth to go to his property as he was in distress.

66.     While at Ronald Howarth's property on March 31, 2022, Plaintiff recorded Jay and other individuals, many of whom were the same ones who were present on the March 16, 2022, incident, performing what appeared to be another violation of a Fourth Amendment right.

67.     Upon Plaintiff demanding the warrant on video, after they had made entry, they could not provide it. They then immediately left the residence only to then return hours later with another warrant which was now notarized by other NPR employees.

68.     Jay became upset and later came to Plaintiff's property, approximately one hour later, to issue yet another baseless code violation.

69.     Plaintiff was forced to file a Writ of Mandamus with Judge Mansfield. Which was denied without a hearing.

70. NPR selectively enforced its codes against Plaintiff and went as far as adopting and/ or amending codes and ordinances with the specific intent of harming Plaintiff and obstructing her from using the Gulf Drive Property. As explained herein, Plaintiff was ultimately forced to leave NPR and the Property out of fear of further reprisal.

71. On numerous occasions, Plaintiff put NPR on notice of the misconduct of its agents and employees, and their lack of training and qualifications to perform their job duties.

72. Plaintiff filed official grievances and written complaints and made public statements to voice her constitutional right to speak at City Council meetings about the misconduct of code enforcement officers, Driscoll, and other city officials.

73. In lieu of investigating and addressing the alleged misconduct through disciplinary measures and/ or additional training and supervision, NPR condoned and encouraged the unlawful and unconstitutional behavior of its agents and employees by awarding them with performance raises despite their reported misconduct.

74. NPR made it clear that Plaintiff's grievances were not appreciated and that she was not welcome in the City of NPR.

75. In fact, NPR's Mayor, Robert Marlowe, publicly stated at a City Council Meeting that Plaintiff and others like her should "just go away".

76. According to their Charter and function, NPR's City Manager is the administrative head of the municipal government. Accordingly, the City Manager has assumed a self-governed and self-directed role within the city.

77.    Certain heads of departments of NPR routinely would consult the City Manager for direction. For example, the Chief of Police would text Manns on a date in publicly provided messages regarding police business asking what she "would like done".

78.    In Accordance with NPR City Code 8-4, on or about April 18th, Plaintiff wrote a concerned email titled "Request for appeal" to Manns and other persons of the city putting them on notice of Plaintiff's in person filing of an appeal to go before the fire board for violations. Plaintiff was denied twice by Manns to go before the fire board for said violations, although it was NPR's city policy.

79.    Instead of supplying Plaintiff her due process, Manns replied that "The code enforcement staff will be instructed to issue any citations that may be warranted at that time" and Plaintiff's appeal request went ignored although Plaintiff attached and outlined the code in the email.

80.    Manns, the current city manager has formed deliberate choices which in turn have evidenced a policy that violates the constitution of the United States such that she did not complete the required public employee's oath on her application which is required by Florida Statutes Section 876.05.

81.    Manns shows no support of the Constitution of the United States including Plaintiff's civil rights alleged in this compliant.

82.    In fear that Defendants were not upholding the Constitution, on April 12, 2022, Plaintiff made a public records request for this information and was informed that "there is no oath of office for City Manager Manns ...".

83.   Also on April 12, 2022, Plaintiff was informed with a public records request that NPR was not in possession of police/code enforcement sworn oaths.

84.   According to public records obtained by Plaintiff, text message records indicate that Manns would appoint police officers to perform special operations on days such as Sunday, by contacting them with her personal phone.

85.   Text messages show consistent erosion of maintaining policy and law, blurring the line of law enforcement duties and NPR's city desires.

86.   On November 1, 2022, the then chief of police would supply a document to NPR city council showing that Plaintiff made a complaint regarding misuse of D.A.V.I.D on August 19, 2022, that Bogart ruled "unfounded" upon their own internal investigation. According to policy also supplied by NPR; unfounded means "the allegation was found to be false".

87.   On November 1, 2022, Chief of Police would supply a document to NPR City Council showing that Plaintiff filed a complaint against police officer Erik Jay and others for breaking and entering and tampering with personal cameras. Although Erik Jay admitted to moving cameras in the police report …. NPR claimed these complaints were "unsustained" and according to NPR's policy this means "insufficient evidence".

88.   In fact, according to the record from the Chief, all the police misconduct cases filed by citizens were unsurprisingly "unsustained" or "unfounded".

89.   The then Chief of Police reclassified the report in an email to Plaintiff on March 21, 2022, claiming he was calling it "burglary".

90.    Ultimately, in January of 2023, the then Chief of Police would resign following public criticism.

91.    In the police investigation of Plaintiffs report, by Lt. Joseph Pascal on March 21, 2022, Erik Jay admits that he obstructed Plaintiffs security camera because "...he had been unsuccessful in getting in touch with Ms. Wojciechowski before the search warrant and he believed they could be actively monitoring the inspection warrant or show up at the location with unknown intentions."

92.    Yet NPR felt that it was not necessary to take further action, and in failing to do so, showed that it is a policy of NPR to not follow laws of procedural warrants.

93.    NPR maintains the building and permitting separate from the Code Enforcement. The Code Enforcement Department within the Police Department which further allows Code Enforcement Officers to believe that they can act as if they are members of the Police.

94.    Code Enforcement Chief, Jay's, actions were part of the custom of NPR's retaliatory efforts.

95.    Manns failed to supervise or train Jay, and other Department employees, on the necessary rights of citizens, Plaintiff assumed that it was because according to a public record obtained by Plaintiff that Manns relationship with Ledford of the building department and Jay of code enforcement.

96.     Manns in her official capacity and on behalf of NPR failed to supervise and enforce the training of Charles Morgan that would have included the F.A.C.E certification which provides education of civil rights and is a listed requirement to be employed by NPR and was so listed at the time of Morgan's hire.

97.     Ledford calls Manns "mom" and according to public record Ledford and Jay share a home in Spring Hill Florida. This goes to show the inappropriate and unprofessional relationships within the government offices of NPR, which in turn leads to the continued harassment by members of offices on citizens.

98.     Phone records obtained from NPR show frequent calls between the extensions of Jay and Ledford, yet Manns failed to enforce a policy for relationships to prevent injury to citizens with misuse of position.

99.     Manns allowed NPR employees to form an inappropriate network of social constructs and relationships.

100.    On December 19, 2018, several NPR police officers including ones involved Plaintiffs case such as Ioppolo, Jay, and Norris as well as Ledford, of the building department and Crystal Feast of the financial department formed a 501(c)(3) not-for-profit corporation named "Cash for Cops Fund Inc" using NPR's address at 6739 Adam Street, New Port Richey, Florida as a mailing address.

101. Manns was made aware in emails of ongoing violations of citizens' rights yet failed to take any action to avoid further harm.

102. NPR has a pattern and custom of violating due process of its citizens by using authority to obstruct the rights of citizens and appears to have a pattern of intentionally creating obstructive events.

103. One such example was an email that Plaintiff sent to Diane Shorter who works for both the Police Department and Code Enforcement as the legal clerk.

104. On December 21, 2021, Plaintiff informed the clerk that again she did not receive the change of a court date which would have resulted in Plaintiff missing the court. According to Diane Shorter, NPR believes that the Plaintiffs "corresponding address" filled out on the appeal form was not required to send documents to and instead she stated they see it as "courtesy".

105.   Instead of following their own hearing procedures, she stated that they would not send any letter by first class mail at least 20 days before a hearing and she even went on to say that contrary to their hearing procedures that "just as you are allowed to reschedule a hearing so is the code officer…".

106.   An email was sent regarding this concern and no action was taken by NPR to prevent this behavior from becoming a policy.

107.   Between the dates of October 2021 and March 16, 2022, NPR employees used electronic water usage reports to monitor the whereabouts of Plaintiff according to discovery documents supplied by Driscoll.

108.   NPR has a custom of failing to take disciplinary action which extends to all departments and in fact in an email thread between Plaintiff and NPR, the risk management department refuses to supply plaintiff with a citizen grievance regarding employee conduct stating that it did not exist.

109.   Public records obtain from NPR show that rather than training employees and ensuring supervision of employees, NPR prefers to retain employees and they were providing financial incentives to continue the unwarranted, unlawful, and harassing behavior.

110.   The evidence in this case will show that NPR, along with Driscoll, Morgan, NPR employees, City Officials, and other third parties, have engaged in a consistent pattern and practice of violating the constitutional rights of NPR citizens, including denying citizens the right to due process.

**COUNT I:**
**42 U.S.C. § 1983.**
**UNLAWFUL SEARCH AND SEIZURE IN VIOLATION OF THE**
**FOURTH AMENDMENT**

111.    Plaintiff reasserts and realleges each allegation in Paragraphs 1 through 110 as if fully set forth herein.

112.    This is an action against NPR and Driscoll for the unlawful search and seizure of Plaintiff's personal and real property, in violation of the Fourth Amendment of the United States Constitution, by and through 42 U.S.C. § 1983.

113.    At all times material hereto, Driscoll, Morgan, Code Enforcement Supervisor, Erik Jay, Code Enforcement Inspector, Alec Remiesiewicz, Police Corporal, Karen Norris, Code Enforcement Officer, Lisa Byington, Police Sergeant, Greg Williams, Police Corporal, Joe Ioppolo, Police Detective, Ed Campbell, Police Officer, Todd Gee, Assistant Fire Chief, Adam Darling, City Planner, Chris Bowman, and City Building Official, Dave Gilson, were employees and/or agents of NPR, and were acting within the course and scope of their employment with same, and acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs, and usages of NPR.

114.    The expectation of privacy exists with respect to traditional police searches but also in respect to administrative searches conducted to enforce regulatory statues, a concept that is supported by interpretations of both federal and Florida State law.

115.    NPR officials were made aware in emails of its Morgan lacked the requisite certification required for his position that would have included rigorous education of civil rights.

116.    Instead, department heads responded an ongoing protracted failure to train its employee(s) to ensure that NPR employees would not violate the rights of NPR citizens.

117.    On or about February 16, 2022, Jay and Remiesiewicz unlawfully searched the curtilage of the Property without a warrant.

118.    On March 16, 2022, NPR, via its agents and employees, including Driscoll, Morgan, Jay, Remiesiewicz, Norris, Byington, Williams, Ioppolo, Campbell, Gee, Darling, Bowman, and Gilson, and other personnel from NPR's Fire Department, forcibly entered the Property and unlawfully searched the property without probable cause and without a legal search warrant and/ or inspection warrant, lacking exigent circumstances, according to the document identified as a warrant by NPR, they had 14 days to notify plaintiff and instead forcibly entered the property the day after allegedly being signed by a judge.

119.    Instead of allowing Plaintiff to be present or calling Plaintiff for access, NPR retained a locksmith to unconstitutionally enter the Property.

120.    At the direction of NPR's agents and employees, the locksmith entered the Property by drilling out the locks on the side door to the Property and prying open the door jam on the front door.

121.   Moreover, the locksmith replaced the locks without Plaintiff's knowledge or consent and failed to provide Plaintiff with a key to the new lock(s). Instead, the locksmith only provided the key to the new lock(s) to City officials.

122.   NPR, via its employees and/or agents, while acting under authority of the State of Florida and under color of law, willfully deprived Plaintiff of her rights and privileges secured to her by the Constitution of the United States when they unlawfully searched the subject property on March 16, 2022, in violation of the Fourth Amendment of the United States Constitution.

123.   At all times material hereto, Driscoll, Morgan, Jay, Remiesiewicz, Norris, Byington, Williams, Ioppolo, Campbell, Gee, Darling, Bowman, and Gilson, acted with the authority possessed by them by virtue of their employment with NPR.

124.   As a result of Driscoll, Morgan, Jay, Remiesiewicz, Norris, Byington, Williams, Ioppolo, Campbell, Gee, Darling, Bowman, and Gilson's conduct, the Property was unlawfully searched without probable cause and without a legal search warrant and/ or inspection warrant on March 16, 2022.

125.   The Property was unlawfully searched in retaliation for speaking out about NPR's unlawful behavior.

126.   NPR, via its employees and/or agents, unlawfully and unconstitutionally searched the Property without giving her 24-hour's notice that a warrant had been issued, as required under Fla. Stat. § 933.26.

127.   Furthermore, the purported Inspection Warrant only authorized Jay to enter the premises "with the presence of the owner or occupant over eighteen (18) years of age[.]"

128.   The owner or occupant over the age of eighteen (18) was not present when the property was searched.

129.   Therefore, the search was unlawful given that it violated the inspection warrant's requirement that the owner or occupant of the structure be present when the search is conducted.

130.   The property was also unlawfully searched by means of forcible entry without reasonable suspicion of a violation of state or local law or rule relating to municipal or county building, fire, safety, environmental, animal control, land use, plumbing, electrical, health, minimum housing, or zoning standards which, if such violation existed, would be an immediate threat to health or safety and without a showing of facts establishing that reasonable attempts to serve a previous warrant have been unsuccessful.

131.   Driscoll, Morgan, Jay, Remiesiewicz, Norris, Byington, Williams, Ioppolo, Campbell, Gee, Darling, Bowman, and Gilson, acting in the course and scope of their duties as officers and/or city officials, took the actions complained of above with knowledge that their actions were in direct violation of the United States Constitution and Plaintiff's rights.

WHEREFORE, Michelle A. Wojciechowski respectfully requests this Honorable Court to enter judgment against the City of New Port Richey for damages, interest, attorneys' fees, and remedies available under and stemming from 42 U.S.C. § 1983 to fullest extent permissible under the law, together with such further relief this Court deems just and proper.

## COUNT II:
## 42 U.S.C. § 1983 –
## RETALIATION IN VIOLATION OF THE
## FIRST AMENDMENT

132.   Plaintiff reasserts and realleges each allegation in Paragraphs 1 through 110 as if fully set forth herein.

133.   This is an action against NPR for retaliation, in violation of the First Amendment of the United States Constitution, by and through 42 U.S.C. § 1983.

134.   Plaintiff often spoke at city council meetings and in other public forums about the unlawful actions of NPR employees, including but not limited to NPR's unlawful search of her property and NPR's failure to comply with public records requests.[2]

135.   Plaintiff's speech regarding the actions of City employees was political and/or ideological speech, which is protected under the First Amendment of the United States Constitution.

---

[2] On numerous occasions, NPR failed to provide Plaintiff with records that she paid for as part of her public records request(s).

136.    In retaliation for exercising her First Amendment right to free speech, NPR (through its agents and employees) threatened, harassed, and intimidated Plaintiff and cited her with baseless code violations to adversely affect Plaintiff's speech and to prevent her from speaking out further.

137.    In response to Plaintiff's comments at City Council meetings, New Port Richey Mayor, Robert Marlowe, stated that those who are "weaponizing public records" (referring to Plaintiff) should just get out of NPR - thereby violating Plaintiff's first amendment right to free speech and NPR's duty to supply public records, in addition to publicly humiliating Plaintiff and discouraging her from speaking at future city council meetings.

138.    Furthermore, on the same night Plaintiff spoke at a City Council meeting, City Council Member, Kelly Mothershead, stated publicly that Plaintiff would continue to be cited for additional code violations given that she publicly complained about the behavior of NPR officials.

139.    In retaliation for exercising her right to free speech, NPR did in fact cite Plaintiff with purported code violations.

140.    On or about January 22, 2022, Plaintiff also exercised her First Amendment right to free speech by posting a sign on her property criticizing NPR for engaging in unlawful behavior.

141.    Thereafter, several NPR employees discussed citing Plaintiff with code violations in retaliation for posting the sign(s) on the Property.

142.    On January 24, 2022, City Code Enforcement Supervisor, Jay, texted a photograph of the sign posted on the Property to Manns.

143.    Manns responded by asking whether Plaintiff could be cited with a code violation for posting the sign and if so, directing Jay to proceed with citing Plaintiff. Jay responded with a text message explaining that Driscoll directed Morgan to "write her up again and go to county court."

144.    In other words, Driscoll directed Morgan to issue a code violation to Plaintiff for posting the sign on her property.

145.    Again, NPR did in fact cite Plaintiff with purported code violations in retaliation for exercising her right to free speech.

146.    On January 24, 2022, Plaintiff received a violation notice for the sign indicating that Plaintiff violated city code by leaving "construction material" on her property.

147.    Upon receiving notice of the purported code violation, Plaintiff called City Code Enforcement Inspector, Alec Remiesiewicz, who stated that if she did not remove the sign from her property she would be fined daily and taken to county court.

148.    The code violations issued by NPR and the statements made by Remiesiewicz had an adverse effect on Plaintiff's constitutionally protected speech.

149.    Plaintiff removed the sign from her property out of fear of further reprisal based on the threats made by Remiesiewicz.

150.    NPR's employees and/or agents have also stalked and harassed Plaintiff in retaliation for making public statements that were critical of NPR and its officials.

151.   Multiple NPR employees and city officials, acting in the course and scope of their employment, have come to Plaintiff's property on numerous occasions to stalk, harass, and intimidate Plaintiff and have repeatedly run her information through Florida's Driver and Vehicle Information Database (DAVID), without any basis for doing so, other than to retaliate against Plaintiff.

152.   City officials have also sent police cars and other unmarked vehicles to sit outside Plaintiff's property.

153.   In a further attempt to stalk and harass Plaintiff, NPR (through its agents and employees) has tracked the water usage activities at Plaintiff's property to determine when she was present.

154.   NPR's employees and/or agents, acting under color of law and pursuant to NPR's custom, policy, and practice, explicitly retaliated against Plaintiff for exercising her clearly established right to free speech on issues of public concern as secured by the First Amendment of the United States Constitution, by and through 42 U.S.C. § 1983.

155.   NPR's employees and/or agents, acting under color of law, violated Plaintiff's First Amendment rights.

156.   The retaliation was so severe and/or pervasive that a person of ordinary firmness would be deterred from exercising his/her First Amendment rights.

157.   At all times material hereto, NPR's employees and/or agents were prohibited from retaliating against its citizens who engaged in protected free speech on matters of public concern.

WHEREFORE, Michelle A. Wojciechowski respectfully requests this Honorable Court to enter judgment against the City of New Port Richey for damages, interest, attorneys' fees, and remedies available under and stemming from 42 U.S.C. § 1983 to fullest extent permissible under the law, together with such further relief this Court deems just and proper.

## COUNT III
## VIOLATION OF 18 USC § 2721

158.   Plaintiff reasserts and realleges every allegation in Paragraphs 1 through 110 as if fully set forth herein.

159.   This is an action against Charles Morgan for violation of the Driver Privacy Protection Act ("DPPA"), 18 U.S. Code § 2721 et. seq.

160.   The Driver Privacy Protection Act, 18 U.S. Code § 2721 et. seq., prohibits persons from using "personal information" obtained from a "motor vehicle record" for any use not permitted under 18 USC § 2721 (b).

161.   "[P]ersonal information" is defined under the DPPA as "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status." 18 USC § 2725(3).

162.   A "motor vehicle record" is defined under the DPPA as "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles." 18 USC § 2725(1).

163.   Morgan knowingly obtained and used personal information obtained from Plaintiff's motor vehicle records to stalk and harass Plaintiff in retaliation for exercising her right to free speech by making public statements that were critical of NPR and its officials. This is not a use permitted under 18 USC § 2721 (b).

164.   Morgan, improperly obtained and used personal information from Plaintiff's motor vehicle records through Florida's Driver and Vehicle Information Database (DAVID) on the following dates:

A.    Morgan ran Plaintiff's information through DAVID three (3) times on October 26, 2021.

B.    Morgan ran Plaintiff's information through DAVID three (3) times on November 2, 2021.

C.    Morgan ran Plaintiff's information through DAVID three (3) times on November 4, 2021.

D.    Morgan ran Plaintiff's information through DAVID six (6) times on February 8, 2022.

E.    Morgan ran Plaintiff's information through DAVID one (1) time on February 9, 2022.

F.    Morgan ran Plaintiff's information through DAVID two (2) times on March 17, 2022; and

G. Morgan ran Plaintiff's information through DAVID five (5) times on April 21, 2022.

164. Plaintiff was injured when Morgan obtained and used her personal information without her consent and in violation of the DPPA.

165. As a proximate result of Defendant's violation of the DPPA, pursuant to 18 USC § 2724, Plaintiff is entitled to recover actual damages, but not less than liquidated damages in the amount of $ 2,500 per violation.

166. In addition, Plaintiff reserves the right to seek punitive damages under 18 USC § 2724(b)(2), upon a showing that Defendant's violations were willful and committed with a reckless disregard of the law.

167. Finally, since Defendant continues to illegally obtain and use personal information from Plaintiff's motor vehicle records to stalk, harass, and retaliate against Plaintiff, the Court should enter an injunction prohibiting such conduct.

WHEREFORE, Michelle A. Wojciechowski respectfully requests this Honorable Court to enter judgment against Charles Morgan for damages in the amount of not less than $2,500 per violation, plus interest, reasonable attorneys' fees, and costs pursuant to 18 USC § 2724 (b)(3), and such other and further relief as this Court deems just and proper.

**COUNT IV:**
**42 U.S.C. § 1983**
**VIOLATION OF RIGHT TO DUE PROCESS UNDER THE**
**FOURTEENTH AMENDMENT**

165.   Plaintiff reasserts and realleges each allegation in Paragraphs 1 through 110 of this Complaint, as if fully set forth herein.

166.   This is an action against NPR for denial of due process in violation of the Fourteenth Amendment of the United States Constitution, by and through 42 U.S.C. § 1983.

167.   The Fourteenth Amendment's procedural due process rights require that an individual receive "notice and an opportunity to be heard before any governmental deprivation of a property interest." *Bailey v. City of Pinellas Park*, 147 F. App'x 932, 935 (11th Cir.2005) (unpublished). A violation of an individual's procedural due process rights may give rise to a claim pursuant to § 1983. McKinney v. Pate, 20 F.3d 1550, 1555 (11th Cir.1994); *Heron v. Rodriguez*, No. 3:11-CV-422-J-34JRK, 2012 WL 3778996, at *3 (M.D. Fla. Apr. 6, 2012), report and recommendation adopted, No. 3:11-CV-422-J-34JRK, 2012 WL 3778991 (M.D. Fla. Aug. 31, 2012)

168.   Paragraphs 24 through 110 provide the details of the acts and omissions on the part of NPR, its employees, agents, and other third parties that form the basis for the damages for which the Plaintiff seeks to be compensated under this claim specifically, those paragraphs demonstrate NPR's intentional refusal to follow policies and procedures that have deprived Plaintiff (and other citizens of NPR) of the right for protection of life, liberty, and property interests.

169.    One of the key factors of NPR's denial of due process to the Plaintiff and other citizens of NPR is its failure to abide by the United States Constitution, and the Constitution and laws of the State of Florida in enacting zoning ordinances and other municipal codes – NPR not only fails to follow Florida law when it enacts an ordinance or code, it likewise fails to follow policies and procedures to ensure that the codes and ordinances it seeks to enforce comply with its obligations under Florida law to protect the liberty or property interest of its citizens.

170.    NPR's municipal codes and ordinances are likewise constitutionally inadequate because they deprive citizens, such as the Plaintiff, of constitutionally protected rights and interests, and fail to do so consistently with the standard set by the United States Constitution and the Constitution of the State of Florida, pursuant to which NPR obtains its existence and authority to act.

171.    NPR further denied Plaintiff the right to due process because it failed and refused to make available a means for Plaintiff to remedy the deprivation and to extent some means was available, those remedies were inadequate.  Which included denying Plaintiff the right of Access to Courts.

172.    Chiefly, NPR provided no mechanism for the Plaintiff to understand the nature of the illusory code violations, improper notice of the violations including her rights and remedies to resolve them, then NPR stonewalled the Plaintiff from having any legal process or recourse by which she could defend herself and make attempts to resolve the issues without prosecution and incurring significant expense.

173.    NPR's ordinances and codes are devoid of any process to enable citizens to avail themselves of remedies to address purported violations of ordinances and codes that were improperly enacted.

174.    NPR likewise exceeds the limits of the authority vested in it by the Florida Constitution by allowing individuals like Driscoll to file lawsuits against its citizens under the guise of a Florida State criminal proceeding, knowing that neither NPR nor Driscoll have the authority to file and prosecute such matters; by doing so, the abuse the legal process to seek criminal type sanctions against individuals for violations of basic civil laws, and the do so without providing any mechanism for the citizen to defend her or himself.

175.    In addition, NPR denied the Plaintiff due process in the way it obtained and executed the sham inspection warrant, leaving her with no recourse to remedy the specious violation she was accused of or to challenge the process and findings from such illegal search of the Property.

176.    NPR failed to give Plaintiff procedural due process as she was not given proper notice to most if not all violations, as the violations were baseless, so she was not on notice as to violation she had even committed and was not provided an opportunity to be heard before any deprivation, restriction, or official violation was enforced. Furthermore, procedural due process requires this opportunity to be heard to be by a natural and impartial party which was made completely unavailable and impossible to Plaintiff in NPR.

WHEREFORE, Michelle A. Wojciechowski respectfully requests this Honorable Court to enter judgment against the City of New Port Richey for damages, interest, attorneys' fees, and remedies available under and stemming from 42 U.S.C. § 1983 to fullest extent permissible under the law, together with such further relief this Court deems just and proper.

## COUNT V
## MALICIOUS PROSECUTION

177.    Plaintiff reasserts and realleges every allegation in Paragraphs 1 through 110 as if fully set forth herein.

178.    Plaintiff files this cause of action against Driscoll for the malicious prosecution of Plaintiff in criminal proceedings and code enforcement proceedings, without probable cause, and for pursuing claims that he knew or should have known were completely lacking in merit, and which were filed with the malicious intent.

179.    As a preliminary matter, Driscoll is not an employee of the State of Florida, he is not employed by the State Attorneys' Office of the Sixth Circuit, he has not been contracted by the State Attorneys' office as a special prosecutor, and thus he has no right or authority to initiate legal proceedings against Plaintiff and other NPR citizens purporting to bring criminal charges against the person.

180.    On or about November 8, 2021, Defendants issued Plaintiff with citations for purportedly violating New Port Richey Code Section 7.00.00 Zoning Violation and Sec. 6-20 Building without a Permit. See Citation Nos. 21-5596 and 21-

5597. Both citations allege that the Subject Property is zoned as an office and that Plaintiff improperly converted it into a residential property.

181.    Morgan was the Code Enforcement Officer that issued Citation Nos. 21-5596 and 21-5597.

182.    On or about January 11, 2022, NPR Special Magistrate, Brent E. Simon, dismissed Citation Nos. 21-5596 and 21-5597 against Plaintiff.

183.    On or about February 8, 2022, Defendants cited Plaintiff for purportedly Building without a Permit in violation of Sec. 6-20 of NPR's Code of Ordinances. *See State of Florida v. Michelle Wojciechowski*, Case No. 2022-MO-000038-MOAXWS, (Pasco Cty. Ct. 2022).

184.    Morgan was the Code Enforcement Officer that instituted Case No. 2022-MO-000038-MOAXWS against Wojciechowski.

185.    On or about February 8, 2022, the Defendants cited Plaintiff with violating Section 7.10 of NPR's Land Development Code based on an alleged zoning violation. See State of Florida v. Michelle Wojciechowski, Case No. 2022-MO-000039-MOAXWS, (Pasco Cty. Ct. 2022).

186.    Morgan was the Code Enforcement Officer that instituted Case No. 2022-MO-000039-MOAXWS against Plaintiff.

187.    On or about April 22, 2022, the Defendants cited Plaintiff for purportedly Building without a Permit in violation of Sec. 6-1 of NPR's Code of Ordinances. See State of Florida v. Michelle Wojciechowski, Case No. 2022-MO-000102-MOAXWS, (Pasco Cty. Ct. 2022).

188. Morgan was the Code Enforcement Officer that instituted Case No. 2022-MO-000102-MOAXWS against Plaintiff.

189. On or about April 22, 2022, NPR cited Plaintiff with violating Section 8-1 of NPR's Code of Ordinances based on an alleged violation of the Fire Prevention Code. *See State of Florida v. Michelle Wojciechowski*, Case No. 2022-MO-000103-MOAXWS, (Pasco Cty. Ct. 2022).

190. Morgan was the Code Enforcement Officer that instituted Case No. 2022-MO-000103-MOAXWS against Plaintiff.

191. On or about May 6, 2022, Defendants cited Plaintiff with violating the Florida Building Code based on the alleged occupancy of the building without a certificate of occupancy. *See State of Florida v. Michelle Wojciechowski*, Case No. 2022-MO-000114-MOAXWS (Pasco Cty. Ct. 2022).

192. Morgan was the Code Enforcement Officer that instituted Case No. 2022-MO-000114-MOAXWS against Plaintiff.

193. On or about October 7, 2022, the Defendants cited Plaintiff for allegedly Tampering with NPR's Water System in violation of Sec. 24-30 of NPR's Code of Ordinances. *See State of Florida v. Michelle Wojciechowski*, Case No. 2022-MO-000190-MOAXWS, (Pasco Cty. Ct. 2022).

194. City Code Enforcement Inspector, Alec Remiesiewicz, instituted Case No. 2022-MO-000190-MOAXWS against Plaintiff.

195.    Driscoll failed to due proper due diligence into the facts underlying these charges, and thus lacked probable cause to file the various lawsuits listed above against Plaintiff; this is in addition to the fact that he exceeded his authority by pretending to represent the State of Florida in a criminal matter in lieu of representing the City of New Port Richey in a civil matter.

196.    Driscoll filed the subject lawsuits out of malice and ill will for Plaintiff in retaliation to public statements and free speech signs she made that were critical of Driscoll and NPR's. Driscoll filed the lawsuits in retaliation for various agency complaints plaintiff filed including a bar grievance and Driscoll filed to intimidate plaintiff knowing that there was a lack of evidence to support the claims in each of the lawsuits, including his knowledge that the code violations he was seeking to enforce were unlawful.

197.    Driscoll participated in the break in at 5445 Gulf Drive after he initiated the subject lawsuits with the malicious intent to retaliate against Plaintiff for criticizing NPR and its officials, and to ultimately force her out of NPR, consistent with the Defendants' pattern and practice of denying citizens of NPR due process concerning enforcement of NPR ordinances and codes, with an intent to force Plaintiff and others like her to know exercise their constitutional rights, including the right to express one's self about improper government acts and omissions.

198.    Driscoll knew the subject lawsuits lacked merit; therefore, Driscoll was forced to dismiss the lawsuits against Plaintiff once he knew he had to appear in Court and try the cases that he unlawfully and unconstitutionally filed against the Plaintiff.

199.    On or about December 14, 2022, Defendants filed a Nolle Prosequi dismissing with prejudice Case Nos. 2022-MO-000038-MOAXWS, 2022- MO-000039-MOAXWS, 2022 -MO-000102 -MOAXWS, 2022 -MO- 000103 - MOAXWS, 2022 - MO- 000114 – MOAXWS against Plaintiff.

200.    Shortly thereafter, Driscoll filed a Nolle Prosequi on or about January 6, 2023, dismissing with prejudice Case No. 2022-MO-000190-MOAXWS against Plaintiff.

201.    Therefore, under applicable prevailing law, there was a bona fide termination of the proceedings in favor of Plaintiff as the is a presumption that the dismissal with prejudice without a resolution or a determination on the merits, is an admission that the case lacked merit.

202.    It is apparent that Driscoll filed these lawsuits with the requisite malice since he filed numerous lawsuits without exercising diligence and without probable cause, including illegally obtaining an unconstitutional civil inspection warrant and executing that warrant all while plaintiff was awaiting the pending court hearing for the cases he had already filed against plaintiff.

203.    Plaintiff was damaged as a direct and proximate result of Defendants' malicious prosecution of the subject lawsuits.

204. Plaintiff was forced to hire an attorney to defend against the Defendants' baseless claims and incurred more than $500,000 in damages resulting from her defense of those lawsuits, and including the emotional, psychological, and mental harm that she has suffered as a result, which should be punitive in nature.

205. Plaintiff was forced to leave her job and had to turn down a new job offer due to the time she had to spend defending against Defendants' baseless lawsuits, therefore resulting in lost income.

206. Plaintiff was also forced to leave her job due to the mental and emotional toll of having to defend against a barrage of frivolous lawsuits.

WHEREFORE, Michelle A. Wojciechowski respectfully requests this Honorable Court to enter judgment against Timothy Driscoll, for damages, interest, attorneys' fees, costs to the fullest extent permissible under prevailing law, with the opportunity to amend this Count at the close of discovery to include a specific request for punitive damages against Driscoll.

## COUNT VI:
## NEGLIGENT HIRING

207. Plaintiff reasserts and realleges every allegation in Paragraphs 1 through 109 of this Complaint, as if fully set forth herein.

208. This is an action for Negligent Hiring against NPR based on the hiring of Morgan as a Code Enforcement Officer for NPR.

209. In October of 2017, Morgan was hired by NPR as a Code Enforcement Officer.

210.   Based on NPR's required qualifications for the position, Morgan was required to either be certified by the Florida Association of Code Enforcement ("FACE") or to secure FACE certification within twelve (12) months of employment.

211.   Morgan was not FACE certified at the time of employment and failed to obtain FACE certification within twelve (12) months of employment.

212.   Even though Morgan was not qualified for the position, NPR hired Morgan based on his "past experience" as a Code Enforcement Officer for the City of St. Petersburg, Florida.

213.   However, upon information and belief, the City of St. Petersburg terminated and/ or disciplined Morgan for inefficiency, neglect, and/ or the falsification of records in the Spring of 2017.

214.   Based on the foregoing, NPR knew or in the exercise of reasonable diligence should have known that Morgan was not qualified to serve as a Code Enforcement Officer for NPR.

215.   Furthermore, NPR knew or should have known that Morgan was unfit to perform the duties for which he was employed and that an undue risk to persons such as Plaintiff would exist because of the employment.

216.   NPR was required to make an appropriate investigation into Morgan's background and qualifications before hiring him as a code enforcement officer and failed to do so.

217. An appropriate investigation would have revealed that Morgan was not qualified for the position and was unsuitable to perform the duties of a Code Enforcement Officer or was not suitable for employment in general.

218. It was unreasonable for NPR to hire Morgan considering the information NPR knew or should have known.

219. Plaintiff was damaged as a direct and proximate result of NPR's negligent decision to hire Morgan as a Code Enforcement Officer.

WHEREFORE, Michelle A. Wojciechowski respectfully requests this Honorable Court to enter judgment against the City of New Port Richey for damages, interest, costs, and such further relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully requests a jury trial on all issues above.


Respectfully submitted by:

Kevin K. Ross-Andino, FBN 66214
Email: kevin.ross@eclatlaw.com
éclat Law, PA
851 South State Road 434, Suite 1070-321
Altamonte Springs, Florida 32714
Phone: (407) 636-7004
Lead Trial Counsel for the Plaintiff

Robert I. Mandell, FBN 15484
Email: rmandell@fightforyou.org
Mandell Law PA
189 South Orange Avenue, Suite 810
Orlando, Florida 32801-3255

Co-counsel for the Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of Court on May 13, 2024, by using the Federal Case Management/Electronic Case Files System (CM/ECF System). Accordingly, a copy of the foregoing is being served on this day to all attorney(s)/interested parties identified on the CM/ECF Electronic Service List, via transmission of Notices of Electronic Filing generated by the CM/ECF System.

Respectfully submitted by:

_____

Kevin K. Ross-Andino