UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHELLE A. WOJCIECHOWSKI,

      Plaintiff,

v.                                          Case No:  8:23-cv-01885-JLB-TGW

CITY OF NEW PORT RICHEY, and
CHARLES MORGAN,

      Defendants.

                                 /

## **ORDER**

This matter is before the Court on two motions for summary judgment (Docs. 130, 132).  The first motion was filed by the Defendant City of New Port Richey (the "City"), and the second was filed by Defendant Charles Morgan ("Morgan").  Together, the motions seek summary judgment on Plaintiff Michelle A. Wojciechowski's remaining claims against them.  Against the City, Plaintiff claims three violations of 42 U.S.C. § 1983 and negligent hiring under Florida law.  Against Morgan, Plaintiff claims one violation of 18 U.S.C. § 2721, the Driver Privacy Protection Act.  These claims arise from the City's zoning enforcement actions against Plaintiff concerning her property in New Port Richey, Florida.  Plaintiff responded to each motion for summary judgment.  (Docs. 153, 154).  After careful review of the parties' briefings and the entire record, the Court **GRANTS** Defendants' motions for summary judgment (Docs. 130, 132).

## BACKGROUND

On November 16, 2020, Plaintiff Michelle A. Wojciechowski purchased real property ("the Property") in New Port Richey, Florida, intending to turn it into a mental health and therapy practice. (Docs. 132 at 2, 154 at ¶ 1). At the time, Plaintiff believed that the Property was zoned for both office and residential use. (Doc. 129-1 at 24:6–8). The Property, however, was zoned for office use only. (Docs. 132-1 at ¶ 2, 129-1 at 280).[1]

In October 2021, the City's Code Enforcement Department learned that the Property had been listed for sale on Zillow, and the listing noted that the Property was currently being used as a residence. (Docs. 132-2 at ¶ 4, 12, 130-3 at ¶ 6). The Zillow listing contained several photographs of the interior and exterior of the structure built on the Property, showing numerous unpermitted renovations. (Doc. 132-2 at 8–12; Doc. 133-2 at ¶¶ 3–6). The City contacted Plaintiff to notify her that the Property was in violation of zoning regulations. (Docs. 129-1 at 103:18–104:2, 153-1). The City further informed her that the Property was zoned for office use only. (Doc. 132-1 at ¶ 2). However, Plaintiff failed to remedy the violations, and the City issued her citations in January of 2022. (Doc. 132-4 at 3–4).

---

[1] Defendants provide evidence to support this fact and many others that Plaintiff does not cite evidence to rebut. Accordingly, pursuant to Federal Rule of Civil Procedure 56(e), the Court treats such facts as undisputed for purposes of this Order. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (explaining that, under Rule 56(e), a nonmovant for summary judgment who would bear the burden of proof at trial must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial'").

2

Defendant Charles Morgan was the city code enforcement officer who issued Plaintiff the citations. (*Id.*). Plaintiff took issue with Morgan's involvement in the City's enforcement actions against her because the two of them have a personal connection involving a child custody dispute. (*See* Docs. 153-2, 129-1 at 94:12–97:8). Plaintiff requested that a different code enforcement officer be assigned to her case, but her requests were denied. (Doc. 129-1 at 97:1–8).

On January 24, 2022, Plaintiff placed multiple signs on the Property that criticized Morgan and the City's hiring and code enforcement practices. (Doc. 154-10). City employees took note of these signs among themselves via text messages, in which they discussed whether to cite Plaintiff for violating a sign ordinance. (*Id.*). One city code enforcement officer, Erik Jay, stated he knew Plaintiff would complain about the City's actions. (*Id.* at 8). Plaintiff also published videos on TikTok discussing the situation, which angered City employees, (Doc. 129-1 at 155:25–156:6), and she filed numerous grievances against City employees. (Doc. 154-8; Doc. 154-13; Doc. 154-14).

On March 15, 2022, the City sought and obtained an inspection warrant from a Florida state-court judge to inspect the Property. (Doc. 133-2). Plaintiff was notified in advance by phone and email of the inspection (Doc. 132-6), but she did not appear at the inspection. (Doc. 154 at ¶ 28). The City executed the warrant in her absence and found additional evidence to show that Plaintiff was violating the Property's zoning requirements. (Doc. 132-2 at ¶ 6). Specifically, the City found that Plaintiff had installed drywall within the building, converted an upstairs room

into a bedroom, and added a kitchenette. (*See* Docs. 129-1 at 66:6–67:22, 132-2 at

¶¶ 6–8, 132-2 at 111–32). Consequently, the City issued additional citations to

Plaintiff regarding these violations. (Doc. 132-4).

Relatedly, from October 26, 2021, to April 21, 2022, Morgan ran Plaintiff's

information through Florida's Driver and Vehicle Information Database (DAVID) a

total of twenty-two times. (Doc. 130-2 at 2). Morgan categorized each query as

"Parking or Code Enforcement" (*id.*), and he conducted the queries within his role

as a code enforcement officer (Doc. 130-3 at ¶¶ 7–11). According to Morgan, the

City commonly uses DAVID to obtain information about the subjects of its

enforcement actions that is necessary for the City to issue citations. (*Id.* at ¶ 11).

Morgan issued citations to Plaintiff using the information he obtained. (*See* Docs.

130-3 at ¶ 13, 132-4, 153-1).

Plaintiff filed this lawsuit on August 21, 2023. (Doc. 1). Her Amended

Complaint (Doc. 50) asserts four claims against the City and one claim against

Morgan. Plaintiff brings three of her claims against the City under 42 U.S.C. §

1983. (*Id.* at ¶¶ 111–57, 165–176). First, she alleges that the City violated her

Fourth Amendment rights by conducting an unlawful search and seizure of her

personal and real property. (*Id.* at ¶¶ 111–31). Second, she alleges that the City

retaliated against her in violation of her First Amendment right to free speech by

harassing her and citing her with "baseless code violations . . . to prevent her from

speaking out further." (*Id.* at ¶¶ 132–57). And third, she alleges that the City

violated her procedural due process rights under the Fourteenth Amendment. (*Id.*

4

at ¶¶ 165–76).  Finally, Plaintiff brings a Florida common law claim against the City for its negligent hiring of Morgan.  (*Id.* at ¶¶ 207–19).  Plaintiff's sole claim against Morgan is that he violated the Driver Privacy Protection Act ("DPPA") by "knowingly obtain[ing] and us[ing] personal information obtained from Plaintiff's motor vehicle to stalk and harass Plaintiff."  (*Id.* at ¶¶ 158–67).  Plaintiff brought claims against a third defendant, but those claims were dismissed with prejudice. (Doc. 164).  The City and Morgan now move for summary judgment (Docs. 130, 132). Plaintiff responded to both motions (Docs. 153, 154).

## LEGAL STANDARD

Summary judgment is appropriate if no genuine dispute as to any material fact exists, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it might affect the outcome of the suit under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A moving party is entitled to summary judgment when the nonmoving parties fail "to make a sufficient showing on an essential element of [their] case with respect to which [they have] the burden of proof."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant always bears the initial burden of informing the district court of the basis for its motion and identifying those parts of the record that demonstrate an absence of a genuine issue of material fact.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

5

When that burden is met, the burden shifts to the nonmovant to demonstrate a genuine issue of material fact that precludes summary judgment. *Id.* The nonmoving party must "go beyond the pleadings" and point to record evidence demonstrating a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. The Court reviews all the record evidence and draws all legitimate inferences in the nonmoving parties' favor. *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1192–93 (11th Cir. 2004).

## DISCUSSION

The Court grants Defendants' motions for summary judgment (Docs. 130, 132) because Defendants are entitled to judgment as a matter of law on this undisputed record. The Court will discuss Plaintiff's section 1983 claims first, followed by her negligent hiring and DPPA claims.

I. **Plaintiff's Section 1983 Claims Fail Because No Reasonable Jury Could Conclude that Plaintiff's First Amendment Rights Were Violated or that a *Monell* Policy or Custom Supported a Violation of Her Fourth or Fourteenth Amendment Rights.**

Plaintiff brings three claims under 42 U.S.C. § 1983, but none of them can succeed on this record. Section 1983 provides as follows in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

6

A municipality or other local government may be held liable under section 1983 where a plaintiff shows: "(1) that [her] constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).  Because the Court decides the City's motion for summary judgment based on the first element as to Plaintiff's First Amendment claim and based on the second element as to Plaintiff's Fourth and Fourteenth Amendment claims, the Court will discuss the claims in that order.

### A. No Reasonable Jury Could Conclude that the City Violated Plaintiff's First Amendment Rights.

Plaintiff has failed to provide evidence sufficient for a reasonable jury to conclude that the City retaliated against her for exercising her First Amendment rights.  To succeed on a First Amendment retaliation claim, a Plaintiff must show: "(1) she engaged in constitutionally protected speech, such as her right to petition the government for redress; (2) the defendant's retaliatory conduct adversely affected that protected speech and right to petition; and (3) a causal connection exists between the defendant's retaliatory conduct and the adverse effect on the plaintiff's speech and right to petition." *Demartini v. Town of Gulf Stream*, 942 F.3d 1277, 1289 (11th Cir. 2019).  The third element asks whether the defendant was subjectively motivated to retaliate against the plaintiff for engaging in protected speech.  *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011).  If the Plaintiff can show that her speech was a "motivating factor behind any harm," then the burden

7

of proof shifts to the defendant. *Smith v. Mosley*, 532 F.3d 1270, 1278 (11th Cir. 2008). Once the burden shifts, "[i]f the defendant can show that [it] would have taken the same action in the absence of the protected activity, [it] is entitled to prevail . . . on summary judgment." *Id.*

Here, no reasonable jury could conclude that there was a causal connection between Plaintiff's exercise of free speech and the City's decision to cite her for code violations. Plaintiff argues that the City was motivated to cite Plaintiff for code violations because she spoke out against the City at its city council meetings, posted signs on the Property, criticized the City over TikTok, and filed grievances against city officials. (Doc. 50 at ¶¶ 132–57; *see also* Doc. 129-1 at 155:25–156:6, 157:17–18; Doc. 154-8; Doc. 154-10; Doc. 154-13; Doc. 154-14). But the record does not show that Plaintiff's speech influenced the City's decisions to cite Plaintiff in any way. To the contrary, the record shows that the City had cited Plaintiff for code violations both before and after she began criticizing the City's practices. (*See, e.g.*, Docs. 132-2 at ¶¶ 1–11, 132-4).

Plaintiff argues that the City employees' text conversation about her yard signs demonstrates the City was motivated to retaliate against her for her speech. (Doc. 154 at 17). But it does not. Nowhere in the text conversation does any City employee or official comment on the content of Plaintiff's speech. (*See* Doc. 154-10). Instead, the employees merely discussed the presence of the signs in her yard, Plaintiff's past actions, and the code violations that they believed Plaintiff was committing. (*Id.*). Erik Jay's solitary comment that he knew Plaintiff would

8

complain about the City's actions cannot demonstrate the subjective motivation necessary to sustain Plaintiff's claim because the context does not show that he mentioned it as a justification to cite Plaintiff. *See Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

Plaintiff also argues that she suffered reputational harm because City officials made negative comments towards her at city council meetings, but she fails to direct the Court's attention to any record evidence to suggest a link between these alleged derogatory comments and the City's code enforcement actions against her. (*See* Doc. 154 at 17). Understood in context and viewed in the light most favorable to Plaintiff, this record cannot demonstrate that the City's course of conduct was motivated by Plaintiff's speech. The City would have taken the same actions regardless of whether Plaintiff had criticized the City. *See Smith*, 532 F.3d at 1278. Accordingly, Plaintiff's section 1983 claim asserting a violation of her First Amendment right to free speech cannot succeed.

### B. No Reasonable Jury Could Conclude that the City Violated Plaintiff's Fourth and Fourteenth Amendment Rights Pursuant to a *Monell* Policy or Custom.

Even assuming that the City violated Plaintiff's Fourth and Fourteenth Amendment rights, she cannot prevail on these claims because no reasonable jury could find that the violations occurred pursuant to a *Monell* policy or custom. A municipality cannot be vicariously liable under section 1983. *Ireland v. Prummell*,

9

53 F.4th 1274, 1289 (11th Cir. 2022).  Instead, "[p]laintiffs who seek to impose liability on local governments under § 1983 must prove that [an] 'action pursuant to official municipal policy' caused their injury."  *Connick v. Thompson*, 563 U.S. 51, 60–61 (2011) (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978)).  "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."  *Id.*  While a government's failure to train its employees regarding their duty to avoid violating citizens' rights may constitute official municipal policy, liability is "at its most tenuous" in that scenario because the municipality's action is far removed from the alleged constitutional violation.  *Id.*

Whatever form the government's action takes, it must constitute "deliberate indifference" toward "a known or obvious consequence of [the municipality's] action."  *Id.* at 61.  This requirement is a high bar, and a "pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train" so as to provide constructive notice to the municipality.  *Id.* at 62.

For example, in *Connick*, the Supreme Court reversed the lower courts' holdings that a district attorney demonstrated deliberate indifference by failing to train prosecutors on their *Brady* obligations towards defendants.  *Id.* at 54.  The *Connick* plaintiff identified four prior *Brady* violations within the district attorney's office and, in the alternative, argued that the *Brady* violation in his case was so

10

egregious that it made a prior pattern unnecessary. *Id.* at 62–63. The district court and a circuit court panel agreed. *Id.* at 56–59, 70–71. In reversing those courts, the Supreme Court restated that the "deliberate indifference" standard required the plaintiff to show that the district attorney was "on notice that, absent additional specified training, it was 'highly predictable' that" the prosecutors would make incorrect *Brady* decisions. *Id.* at 71 (citation omitted). The four prior incidents were insufficient to meet that burden because they involved distinguishable *Brady* violations, and the single-violation theory failed because the *Brady* violation was not the "obvious consequence" of the district attorney's failure to train the attorneys in light of the substantial legal training that attorneys undergo. *Id.* at 62–63, 66–67. Without a pattern of similar constitutional violations, it was impossible for the plaintiff to prevail on his claim that a *Monell* policy existed. *Id.* at 71–72.

Here, too, Plaintiff cannot succeed on her section 1983 claims because no reasonable jury could conclude that a *Monell* policy or custom supported the constitutional violations that Plaintiff alleges. Starting with Plaintiff's Fourth Amendment claim, Plaintiff can point to only one prior instance in which she claims that the City violated an individual's Fourth Amendment rights in a similar way. (*See* Doc. 129-1 at 123:15–124:16, 290). However, as *Connick* demonstrates, one prior incident is rarely sufficient to establish that a *Monell* policy existed. *See Connick*, 563 U.S. at 63–68. This case is no exception, as Plaintiff has failed to demonstrate that the Fourth Amendment violation she claimed was of the obvious

11

sort that *Connick* discussed. *See id.* at 63–64. Therefore, Plaintiff's Fourth Amendment claim could not succeed if presented to a reasonable jury.

Plaintiff's Fourteenth Amendment claim fails for similar reasons. Plaintiff's Amended Complaint alleges a broad array of procedural due process violations against the City (Doc. 50 at ¶¶ 165–176). But Plaintiff's response to the City's motion for summary judgment discusses only the City's "code enforcement and inspection process." (Doc. 154 at 18). Accordingly, Plaintiff has abandoned her allegations that were not tied to those activities. *See Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (citation omitted) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."). On the allegations, Plaintiff fails to cite any evidence whatsoever to support her contention that the City had a *Monell* custom or policy of ignoring due process rights. (*See* Doc. 154 at 18). Accordingly, summary judgment is appropriate on this claim as well. All of Plaintiff's section 1983 claims fail.

## II.    Plaintiff's Negligent Hiring Claim Fails.

Plaintiff's claim that the City negligently hired Morgan also fails. To prevail on a negligent hiring claim under Florida law, a plaintiff must show that:

> (1) the employer was required to make an appropriate investigation of the employee and failed to do so; (2) an appropriate investigation would have revealed the unsuitability of the employee for the particular duty to be performed or for employment in general; and (3) it was unreasonable for the employer to hire the employee in light of the information he knew or should have known.

*Malicki v. Doe*, 814 So. 2d 347, 362 (Fla. 2002) (quoting *Garcia v. Duffy*, 492 So. 2d 435, 438 (Fla. 2d DCA 1986)). These elements also require the plaintiff to show that

the employee committed a tort outside the scope of his employment. *Garcia*, 492 So. 2d at 438.

Here, reviewing the evidence in the light most favorable to Plaintiff, she has failed to demonstrate that Morgan committed a tort outside the scope of his employment. She provides no evidence that Morgan acted as anything other than a code enforcement officer, and she cites no evidence that he committed an intentional tort. (*See* Doc. 154 at 19). Indeed, all of Morgan's acts occurred in his role as a city code enforcement officer. (*See id.*). Because Plaintiff fails to show that Morgan committed a tort against her outside the scope of his employment, the fact that Morgan was not certified by the Florida Association of Code Enforcement (Doc. 132 at 21) is irrelevant. Therefore, summary judgment in the City's favor is appropriate on this claim.

### III. Plaintiff's Driver Privacy Protection Act Claim Fails.

Finally, summary judgment is appropriate on Plaintiff's DPPA claim against Morgan because Morgan's use of Plaintiff's personal information was permitted under the statute. The DPPA provides that "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court." 18 U.S.C. § 2724(a). The plaintiff in a DPPA suit bears the burden to demonstrate that the defendant's use was impermissible. *Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King & Stevens, P.A.*, 525 F.3d 1107, 1112 (11th Cir. 2008).

13

18 U.S.C. § 2721(b) sets forth the permissible uses of personal information under the DPPA. Under that subsection, personal information may be disclosed "[f]or use by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions." 18 U.S.C. § 2721(b)(1).

As the undisputed record demonstrates, Morgan's use of Plaintiff's personal information was permissible because Morgan obtained Plaintiff's personal information within his role as a city code enforcement officer. (Doc. 130-3 at ¶¶ 7–11). Plaintiff argues that Morgan's use was impermissible because his code enforcement actions were not related to parking codes but rather building codes. (Doc. 154 at 13). The plain and unambiguous language of section 2721(b)(1) draws no such distinction. 18 U.S.C. § 2721(b)(1). Moreover, nothing in the record suggests that Morgan used Plaintiff's personal information for anything other than the permissible use he claims. Plaintiff's response to Morgan's motion for summary judgment attempts to shift the burden of proof onto Morgan to show that his use was permissible. (Doc. 153 at 13–14). But the law is clear that the burden of proof is on Plaintiff to demonstrate that Morgan's use was impermissible. *See Thomas*, 525 F.3d at 1112. Accordingly, Plaintiff's DPPA claim could not succeed if set before a reasonable jury, and summary judgment is appropriate.

14

## CONCLUSION

For the reasons set forth above, Defendant City of New Port Richey and Defendant Charles Morgan's motions for summary judgment (Docs. 130, 132) are **GRANTED**.  The Clerk of Court is **DIRECTED** to enter judgment accordingly, terminate all pending deadlines, and close the case.

**ORDERED** in Tampa, Florida, on June 25, 2026.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE